David J. Miclean (#115098)
(miclean@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

John C. Adkisson (Pro Hac Vice)
Ann N. Cathcart Chaplin (Pro Hac Vice)
Joel D. Leviton (Pro Hac Vice)
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Kevin H. Rhodes (Pro Hac Vice)
Michael L. Gannon (Pro Hac Vice)
3M Innovative Properties Company
Office of Intellectual Property Counsel
3M Center
P.O. Box 33427
St. Paul, MN 55133-3427
Telephone: (651) 733-1500
Facsimile: (651) 736-3833

Attorneys for Plaintiff
3M COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| 3M COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MAURICE KANBAR, MK ENTERPRISES INC., ROLLIT, LLC, AND REX PRODUCTS INC., <br><br> Defendants. | Case No. C 06-01225 JW (HRL) <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL RE INITIAL DISCLOSURES AND ORGANIZATION OF DOCUMENTS [REDACTED VERSION]** <br><br> Hearing Date: June 12, 2007 <br> Time: 10:00 A.M. |

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. STATEMENT OF THE ISSUES TO BE DECIDED | 2 |
| III. STATEMENT OF FACTS | 2 |
|     A. Procedural Background | 3 |
|     B. 3M's Initial Disclosures Properly Identify the Categories of Documents on Which 3M May Rely By Category | 4 |
|     C. Defendants Requested an Enormous Number of Documents | 5 |
|     D. 3M Properly Produced Documents Responsive to Defendants' Broad Requests | 6 |
|         1. 3M Produced a Significant Number of Documents | 6 |
|         2. 3M Produced Documents As 3M Keeps Them in the Ordinary Course of Business | 7 |
|         3. 3M Provided Additional Information to Help Defendants Locate Documents | 7 |
|         4. 3M Did Not Act Improperly By Requiring Compliance with the Protective Order | 8 |
|         5. Defendants Continue to Demand that 3M Provide an Index of Its Production, Despite Being Advised that 3M Does Not Have Such an Index | 9 |
| IV. ARGUMENT | 9 |
|     A. 3M Is Not Required to Identify Specific Documents In Its Initial Disclosures | 9 |
|     B. 3M Properly Produced Its Documents As They Are Kept in the Usual Course of Business. | 11 |
| V. CONCLUSION | 13 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Braun v. Agri-Systems*
   No. F-02-6482 A WILJO, 2006 WL 278592 (E.D. Cal. Feb. 2, 2006) .............................. 11

*Johnson & Johnston v. R.E. Service Co.*
   No. C-03-2549 SBA (JL), 2004 WL 3174428 (N.D. Cal. Nov. 2, 2004) ........................... 11

**STATUTES**

Fed. R. Civ. P. 26 ..................................................................................................................... 9

Fed. R. Civ. P. 26(a) .............................................................................................................. 10

Fed. R. Civ. P. 26(a)(1)(B) ............................................................................................... 2, 4, 9

Fed. R. Civ. P. 26(a)(3)(C) .................................................................................................... 10

Fed. R. Civ. P. 34(b)(i) .................................................................................................. 2, 11, 12

## I. INTRODUCTION

3M Company ("3M") owns the famous POST-IT trademark and the famous Canary Yellow color trademark, both used in connection with sticky notes. On March 21, 2006, the Court preliminarily enjoined the defendants Maurice Kanbar, Rollit, LLC, MK Enterprises Inc., and Rex Products Inc. (collectively "Defendants") from using the trademark ROLLIT for sticky notes and any shade of yellow confusingly similar to 3M's Canary Yellow color trademark on sticky notes.

After the injunction was entered, Defendants selected a new trademark and color for their sticky notes, and are now offering their product for sale. Although Defendants claim that 3M is attempting to "quash legitimate competition" by using its "enormous wealth and resources," 3M has no objection to Defendants selling sticky notes in connection with their new trademark and color, and have advised Defendants as much. Rather than simply doing so, Defendants have turned a straightforward trademark infringement case into a full-scale assault on 3M's trademark rights, requesting that the Court invalidate two of the most famous trademarks in the fields of office supplies and stationery products.

As part of its efforts to turn this molehill of a case into a mountain, Defendants have served sweeping document requests that essentially demand the production of <u>all</u> documents relating to 3M's marketing and sale of POST-IT brand sticky notes over the past 26 years. As just one example, Defendants' Request for Production No. 2 seeks virtually every piece of paper relating to 3M's POST-IT brand sticky notes over the past 26 years:

> <u>All</u> documents that describe, discuss, document, chart and otherwise relate to the conception, evaluation, development, selection, adoption, first use and/or plans for future use by Plaintiff of [3M's Canary Yellow mark] and [3M's POST-IT logo].

As one would expect, responding to Defendants' discovery has been a monumental undertaking for a company that over the past 26 years has employed hundreds of people across the globe to sell millions upon millions of the ubiquitous POST-IT notes. To respond to Defendants' broad requests, 3M hired thirty-four contract attorneys, who spent over 2,000 hours reviewing over 820,000 pages of documents. From that review, approximately 580,000 pages were identified as relevant and not privileged and were produced to Defendants.

1   Rather than undertake a similar effort to review the very documents they had requested, Defendants are looking for 3M to provide them with a shortcut. Defendants seek an order compelling 3M to identify in its initial disclosures "the documents by bates number that it might rely on to support its claims and defenses." But 3M already provided Defendants with initial disclosures that comply with the Rules and identify categories of documents that 3M may use at trial or otherwise in support of its claims. Defendants also seek an order compelling 3M to re-organize its production or create some sort of detailed index of 3M's document production, despite being advised that 3M, in accordance with Fed. R. Civ. P. 34(b)(i), produced its documents as they are kept in the ordinary course of business.

3M's initial disclosures and document production fully complied with the Federal Rules. Defendants should not be heard to complain when they got the documents they asked for. The Rules simply do not require that 3M undertake the additional efforts Defendants demand now that they have what they requested and now want 3M to help them with their review. 3M, therefore, respectfully requests that the Court deny Defendants' motion.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

A.   Whether 3M must identify specific documents in its initial disclosures, rather than identify categories of documents as allowed by Fed. R. Civ. P. 26(a)(1)(B).

B.   Whether 3M must re-organize its documents to correspond to particular document requests or create a detailed index of its document production after it already produced its documents as they are kept in the ordinary course of business, in compliance with Fed. R. Civ. P. 34(b)(i).

## III. STATEMENT OF FACTS

Defendants attempt to paint this case as a David versus Goliath story. Not so. In reality, Mr. Kanbar is a man of considerable wealth, as he proudly advised the Court during the hearing on 3M's motion for a temporary restraining order and preliminary injunction. Leviton Decl., Ex. 1 ("I have been extremely fortunate in making a good deal of money with inventions….I can't live any better than I'm now living."). Indeed,

. Leviton Decl., Ex. 20. Public articles refer to Mr. Kanbar
2   PLTFS MEMO OF POINTS AND AUTHORITIES IN OPP TO DEFS
MOTION TO COMPEL
Case No. C 06-01225 JW (HRL)

as a billionaire. Leviton Decl., Ex. 2. In the aftermath of the Preliminary Injunction entered in this case, Defendants changed the name and color paper of their sticky note products, yet Mr. Kanbar continues to use his considerable resources to fund Defendants' challenges to 3M's trademarks. Indeed, Mr. Kanbar has indulged his campaign against 3M by hiring in-house counsel whose job is to litigate against 3M. Leviton Decl., ¶ 5.

Defendants' current challenges to 3M's trademark rights are just the latest in a series of efforts designed to undermine 3M's rights in the POST-IT trademark. Before launching their sticky note product, Defendants were well aware of 3M's rights in the POST-IT trademark and

Leviton Decl. Ex. 3.

Leviton Decl. Ex. 4

*Id.*

### A.   Procedural Background

In January of 2006, 3M learned that Defendants were attempting to secure distribution for ROLLIT sticky notes and dispensers through a wholesaler that distributes 3M's POST-IT sticky notes. Leviton Decl., ¶ 2. 3M then saw Defendants' packaging and website, learning that (i) Defendants presented the ROLLIT logo in the same yellow, orange, and black colors as 3M's POST-IT logo, (ii) ROLLIT sticky notes were colored a shade of yellow confusingly similar to 3M's Canary Yellow trademark, (iii) confusingly similar yellow sticky notes prominently appeared on Defendants' packaging and website, (iv) 3M's POST-IT trademark and "3M" were featured on Defendants' packaging, and (v) Defendants incorporated the POST-IT trademark in numerous hidden metatags on the www.rollit.com website. *Id.*

After Defendants failed to respond to 3M's attempts to resolve this dispute short of litigation, 3M initiated this lawsuit on February 17, 2006 and moved for a temporary restraining order and preliminary injunction on March 1, 2006. [Docket Nos. 1, 11.] On March 21, 2006, the Court held a hearing on 3M's motion, and recognized that the similarities between the POST-IT and ROLLIT marks "are obvious." (Leviton Decl., Ex. 1 at 26, *see also* p. 33.) The Court preliminarily enjoined Defendants from using the ROLLIT mark and their proposed shade of yellow. [Docket No. 25.] On April 5, 2006, the Court issued a written opinion enjoining the Defendants from "[u]sing the designation ROLLIT, or any confusingly similar variations" and "[u]sing the color Canary Yellow, or any shade of yellow[] confusingly similar to 3M's Canary Yellow color trademark (including the shade of yellow Defendants currently use on their sticky notes)...." [Docket No. 28.]

### B. 3M's Initial Disclosures Properly Identify the Categories of Documents on Which 3M May Rely By Category

Pursuant to Rule 26(a)(1)(B), 3M's initial disclosures, and its supplemental initial disclosures, identified categories of documents that 3M may use to support its claims or defenses. Landry Decl., Ex. B. 3M identified the following categories of documents relating to 3M's POST-IT and Canary Yellow trademarks – the two trademarks of 3M at issue in this case:

- The POST-IT trademark;
- The development, marketing, and sales of products offered under or in connection with the POST-IT trademark;
- 3M's registrations for the POST-IT trademark;
- 3M's enforcement of the POST-IT trademark against other "IT" formative marks;
- The Canary Yellow trademark;
- The development, marketing, and sales of products offered under or in connection with the Canary Yellow trademark;
- 3M's registrations for the Canary Yellow trademark; and
- 3M's enforcement of the Canary Yellow trademark.

On October 16, 2006, Defendants objected to 3M's Initial Disclosures. Landry Decl., Ex., J. On October 17, 2006, 3M advised Defendants that 3M had identified the various categories on which it intends to rely, as required by the Federal Rules. *Id.* Defendants then dropped the issue for approximately six months. When Defendants raised the issue again, 3M reiterated its position in a letter dated April 16, 2007. Landry Decl. Ex. J.

### C. Defendants Requested an Enormous Number of Documents

On May 15, 2006, Defendants served their first set of discovery requests. Defendants' document requests include the following requests, among others:

- Request No. 2: <u>All</u> documents that describe, discuss, document, chart and otherwise relate to the conception, evaluation, development, selection, adoption, first use and/or plans for future use by Plaintiff of [3M's Canary Yellow mark] and [3M's POST-IT logo].

- Request No. 22: <u>All</u> documents that reflect, refer to, relate to, or evidence the channels of trade through which Plaintiff's goods move or are intended to move.

- Request No. 23: <u>All</u> documents and things that evidence, concern or otherwise relate to your Responses to Interrogatories No. 38 and 39 [regarding, among other things, trade shows, consumer shows, or other meetings of two or more people since 2004, at which 3M advertised, promoted, marketed, offered for sale and/or discussed POST-IT notes] served contemporaneously herewith, whether or not you relied on the documents to support your response.

- Request No. 24: <u>All</u> documents and things that reflect, refer to, relate to, or evidence any test marketing or other consumer testing, including all surveys, market studies, opinion polls, or other sampling of attitudes or opinions, including results and summaries, relating to Plaintiff's Mark(s) allegedly infringed upon by Defendants in this matter.

- Request No. 25: <u>All</u> documents and things referring to the quality of Plaintiff's goods.

Leviton Decl., Exs. 5, 6 (emphasis added).

On June 15, 2006, Defendants granted 3M an extension of time to respond to their discovery requests because Defendants were considering 3M's settlement proposal. *Id.*, ¶ 3. On June 30, 2006, 3M served its discovery responses. Leviton Decl., Ex. 7. 3M objected to the overbroad scope of Defendants' requests (in addition to other objections), but also agreed to produce documents. *Id.*

In July of 2006, the parties agreed to put discovery on hold to continue to pursue settlement. *Id.*, ¶ 4. The parties participated in a settlement conference on August 15, 2006 before Magistrate Judge Seeborg. *Id.* The parties continued to discuss settlement through November of 2006. In fact, in late November 2006, business representatives of 3M traveled to San Francisco to meet with Mr. Kanbar. *Id.* After settlement discussions failed, the parties resumed discovery in earnest.

### D. 3M Properly Produced Documents Responsive to Defendants' Broad Requests

#### 1. 3M Produced a Significant Number of Documents

On October 13, 2006, 3M advised Defendants that 3M would be producing documents on a rolling basis. *Id.*, Ex. 8. During the months of October and November, 3M continued its document collection efforts by, among other things, gathering nearly a million pages of documents and meeting with employees of 3M's Office Supplies division. Brunner Decl., ¶¶ 2, 3. 3M gathered hard copy and electronic documents, as well as a huge volume of e-mail messages sent among employees involved in 3M's POST-IT note business. *Id.*, ¶¶ 3, 4.

Between November 2006 and February 2007, 3M produced over 21,000 pages of documents. *Id.*, ¶ 3. In February 2007, after diligently completing the massive collection of documents, 3M engaged contract attorneys to complete the document review so that responsive, non-privileged documents could be produced to Defendants as quickly as possible. *Id.* In all, 3M engaged thirty-four contract attorneys who spent over 2,000 hours reviewing over 103,000 documents comprising over 820,000 pages. *Id.* 3M produced a significant volume of documents by the end of March, and additional documents at the end of April. *Id.*, ¶ 3. In total, 3M's production to date has been extensive (over 595,000 pages), which was necessary to respond to Defendants' sweeping requests.

Even with 3M's large production, Defendants have continued to demand more documents. For instance, on April 6, 2007, Defendants served their third set of Requests for Production containing more broad requests for documents, including "<u>all</u> original catalogs and brochures which contain images of Plaintiff's Canary Yellow sticky note product," "<u>all</u> original catalogs and brochures which contain images of Plaintiff's yellow sticky note," and "<u>all</u> original catalogs and brochures which contain images of Highland's yellow sticky note product," all without any limitation as to time. Leviton Decl., Ex. 9 (emphasis added). Defendants also served a fourth set of document requests on May 14, 2007. Leviton Decl., Ex. 10. Ironically, Defendants continue to serve sweeping requests while at the same time complaining about the size of 3M's production and demanding that 3M assist Defendants with their review.

### 2. 3M Produced Documents As 3M Keeps Them in the Ordinary Course of Business

3M produced its documents as they are kept in the ordinary course of business. Brunner Decl. ¶ 4. When paper files were reviewed and produced, copies of the file folder labels were also produced. *Id.* Many of the documents 3M produced came from electronic files and e-mails. *Id.* Because these documents are not from paper files, there are no file folders for these documents. *Id.* However, these documents were produced in the order in which they are kept by the source of the documents. *Id.* Given how e-mails are kept in the ordinary course, emails are produced in chronological order by source. *Id.*

### 3. 3M Provided Additional Information to Help Defendants Locate Documents

In addition to producing the documents as they are kept in the ordinary course of business, upon Defendants' request, 3M provided a source list that identifies from which 3M employees particular documents came. Leviton Decl., Ex. 11. This source list addressed the vast majority of documents. While Defendants now complain that 3M's early production was not accounted for on the list, Defendants never requested an additional source list for those particular documents. *Id.* at ¶ 16. In response to Defendants' inquiries, 3M also identified the document number ranges for

expert reports produced in prior litigation and documents concerning prior disputes involving 3M's POST-IT and Canary Yellow trademarks. Leviton Decl., Ex. 11.

To produce certain confidential settlement agreements without breaching the terms of the agreements, 3M needed either a subpoena or a court order. In its June 30, 2006 response to Defendants' Request for Production No. 35, 3M advised Defendants of certain settlement agreements that are subject to confidentiality agreements with third parties. Leviton Decl., Ex. 7. When Defendants requested that 3M produce the confidential settlement agreements in April of 2007, 3M advised Defendants that under the terms of the agreements, 3M could only produce the agreements in response to a valid subpoena or court order. *Id.*, Ex. 12. 3M further advised Defendants that it would sign a stipulation and proposed order for the Court to enter ordering 3M to produce such confidential documents, so that 3M could produce them without breaching the agreements. *Id.* On May 2, 2007, Defendants sent 3M such a stipulation. *Id.* 3M signed the stipulation that same day, and the order was entered on May 3, 2007. *Id.*, ¶ 17; Docket No. 92. The next day, 3M advised Defendants that the confidential settlement agreements were included at "the end" of 3M's production, which was made available to Defendants for inspection and copying. Leviton Decl. Ex. 13. Defendants now claim that 3M "buried" the documents at the end of the production, without noting that 3M told Defendants exactly where to find the documents in the production. Defs.' Brf. at 10-11. 3M did not "bury" anything.

### 4. 3M Did Not Act Improperly By Requiring Compliance with the Protective Order

Defendants go to great lengths to portray 3M's efforts to protect the confidentiality of 3M's sensitive materials as 3M obstructing Defendants' review of 3M's materials. Defs.' Brf. at 6. In May of 2006, 3M agreed upon the terms of a protective order with Defendants' then outside counsel, which was filed by the parties on May 26, 2006. [Docket No. 29.] In negotiating that protective order, Defendants never raised the issue of whether in-house attorneys for Defendants (of which there was at least one) should have access to 3M's confidential materials. When Defendants' current in-house counsel was retained by Defendants, 3M sought confirmation that any in-house attorneys who would have access to 3M's most confidential information were not

involved in competitive decision-making relating to sticky notes, as is the standard in the case law. Leviton Decl., Ex. 8. After Defendants' in-house attorneys provided that confirmation (Leviton Decl., Ex. 14), the parties filed an amended protective order that allowed Defendants' two in-house attorneys access to 3M's highly confidential information. [Docket No. 57.]

3M had a legitimate concern over the disclosure of its confidential material, especially until it was confirmed that the two attorneys were not competitive decision-makers. Moreover, at any time, any of the three outside attorneys Defendants have engaged in connection with this dispute could have reviewed 3M's confidential discovery responses and documents.

### 5. Defendants Continue to Demand that 3M Provide an Index of Its Production, Despite Being Advised that 3M Does Not Have Such an Index

In emails dated April 11 and 12, 2006, Defendants demanded that 3M provide an index of its document production. Leviton Decl., Ex. 15. On April 16, 2007, 3M informed Defendants that 3M does not have such an index. *Id.*, Ex. 16. Nonetheless, Defendants now move the court to compel 3M to undertake the effort to create such an index and provide Defendants with a copy.

## IV. ARGUMENT

### A. 3M Is Not Required to Identify Specific Documents In Its Initial Disclosures

3M's initial disclosures comply fully with Fed. R. Civ. P. 26(a)(1)(B) by identifying the categories of documents that 3M may use to support its claims or defenses. Defendants are seeking something to which they are not entitled under Rule 26(a)(1)(B); namely, 3M's trial exhibit list. Trial exhibit lists are not yet due, and 3M has not yet selected its trial exhibits. Defendants' motion should be denied.

The Federal Rules require that a party provide "a copy of, or <u>a description by category and location</u> of, all documents, electronically stored information, and tangible things…that the disclosing party may use to support its claims or defenses…." Fed. R. Civ. P. 26(a)(1)(B) (emphasis added). "[A]n itemized listing of each exhibit is not required." Fed. R. Civ. P. 26 advisory committee's note (1993). "[T]he disclosures should describe and categorize, <u>to the extent identified during the initial investigation</u>, the nature and location of potentially relevant documents and records…." *Id.* (emphasis added). The purpose of this disclosure is "to enable

opposing parties (1) to make an informed decision concerning which documents might need to be examined, <u>at least initially</u>, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests." *Id.* (emphasis added).

3M's initial disclosures identified documents relating to its POST-IT and Canary Yellow trademarks and various sub-categories of documents relating to those trademarks. Contrary to Defendants' claim, 3M did not "describe[] every document housed at 3M's Center in St. Paul, Minnesota." Defs.' Brf. at 4. Consistent with the Federal Rules, 3M identified categories of documents relating to the trademarks at issue in this case, which are the categories of documents that 3M anticipated it may use to support its claims or defenses.

Defendants insist that 3M "must provide a <u>specific</u> description of the documents by bates number that it might rely on to support its claims and defenses." Defs.' Brf. at 10 (emphasis in original). Notably, Defendants have not cited a single case in support of their position. *Id.* Plainly, a party is not required to identify specific documents by bates numbers in initial disclosures, as initial disclosures are typically served before documents are even produced. Further, the Rule specifically allows for identification of categories of documents.

Moreover, it is the pretrial disclosure requirements of Fed. R. Civ. P. 26(a)(3)(C) that require a party to identify each document it expects to offer at trial. A comparison of the initial disclosure requirements to pretrial disclosure requirements confirms that a party need not identify specific documents in initial disclosures. Such an identification is reserved for the pretrial disclosures, which are not yet due, and at this point in the litigation, 3M has not selected the documents it intends to use at trial.[1] Simply put, initial disclosures are not trial exhibit lists, which is what Defendants are seeking. 3M has fully complied with Rule 26(a), and Defendants cite no authority to support their novel argument that the Rule requires more. 3M, therefore, requests that the Court deny Defendants' motion to compel 3M to specifically identify the documents on which it may rely at trial.

---

[1] Interestingly, in their initial disclosures, Defendants also do not identify specific documents on which they may rely. In fact, Defendants do not even describe the categories of documents on which they might rely. Rather, Defendants disclose that they have already produced documents to 3M and they may use any of their document production to support their claims or defenses. Leviton Decl. Ex. 17.

B. **3M Properly Produced Its Documents As They Are Kept in the Usual Course of Business**

A party may either produce documents for inspection as they are kept in the ordinary course of business, or organize the documents to correspond to the categories of the document requests. Fed. R. Civ. P. 34(b)(i). The Rule leaves the choice of organization up to the producing party.

3M produced copies of its documents in the manner in which they are kept in the ordinary course of business at 3M. Brunner Decl., ¶ 4. Given that many of the documents are electronic, file folders do not exist. *Id.* When file folders did exist, 3M produced them. *Id.* In addition, although not obligated to, 3M provided Defendants with a source list for the documents and specifically identified the document identification number ranges for certain documents that Defendants demanded 3M segregate. Leviton Decl., Ex. 11. As such, 3M need not reorganize its documents to correspond to the document requests.

Defendants contend that if not forced to reorganize its documents, 3M should be compelled to produce a detailed index of the documents, despite being informed that no such index exists. Leviton Decl., Ex 16. "An index, whether of documents produced or those in existence…is not required under Rule 34." *Braun v. Agri-Systems*, No. F-02-6482 A WILJO, 2006 WL 278592, at *5 (E.D. Cal. Feb. 2, 2006) (Leviton Decl. Ex. 18) ("[I]t is uncontroverted, that [plaintiff] does not maintain a[n] 'index' of documents in its normal course of business. Rule 34 does not require a party to create such an index."). Moreover, even if 3M had or did create an index of its document production, such an index would be immune from disclosure under the work product doctrine. *See id.* ("The Court is convinced that the overall document index created by [defendant's document retention firm] was created for and in anticipation of litigation…and must be considered privileged."). *See also Johnson & Johnston v. R.E. Service Co.*, No. C-03-2549 SBA (JL), 2004 WL 3174428, at *4 (N.D. Cal. Nov. 2, 2004) (Defendant's "objection to producing the index as attorney work product is well taken.") (Leviton Decl., Ex. 19). 3M should not be required to prepare and turn over 3M's attorneys' work product. Further, Defendants' counsel has reviewed 3M's documents and could have created their own index if desired.

Defendants cite two examples in support of their position that 3M's documents are not organized to the Defendants' liking. First, Defendants claim that "critical emails concerning 3M's discovery of the Rollit product, are buried among the masses of marketing and promotional material." Defs.' Brf. at 10. Defendants are wrong. 3M's email string concerning 3M's discovery of the ROLLIT product bear document identification numbers 3MCo0438992-3MCo0438998. By referencing the source list 3M provided, it is clear that the email string is from the email account of 3M employee John Gartner. Leviton Decl., Ex. 11. All of Mr. Gartner's produced documents surrounding this email string are also emails. Any marketing materials included in this range are attachments to Mr. Gartner's emails, which were produced adjacent to the corresponding email (as that is how these files are kept in the ordinary course of business). Brunner Decl., ¶ 4. This email string was not "buried."

Defendants' other example of 3M purportedly "burying" documents involves 3M's production of confidential settlement agreements. Defs.' Brf. at 11; Landry Decl., Ex. J. 3M advised Defendants that the confidential settlement agreements, which required the stipulation and Court order so they could be produced without breaching the agreements, were inserted at "the end" of 3M's document production. Leviton Decl., Ex. 13. But as explained above, Defendants conveniently neglect to mention that 3M specifically identified the location of those agreements. 3M did not "bury" anything.

3M expended considerable effort and expense in collecting and producing documents to respond to Defendants' broad discovery requests. 3M produced documents as kept in the ordinary course of business, as permitted by Rule 34(b)(i). Having produced documents in compliance with the Federal Rules, 3M should not be forced to reorganize its document production or create and produce an index. 3M respectfully requests that the Court deny Defendants' motion to compel.

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, 3M respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: May 22, 2007

FISH & RICHARDSON P.C.

By: /s/ John C. Adkisson
    John C. Adkisson
Attorneys for Plaintiff
3M COMPANY

50417347.doc