*E-filed 6/14/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 3M COMPANY, | Case No. C06-01225 JW (HRL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| MAURICE KANBAR, MK ENTERPRISES, INC., ROLLIT, LLC, and REX PRODUCTS, INC. | Re: Docket No. 93 |
| Defendants. | |

Plaintiff 3M Company ("3M") sues over the alleged infringement of two trademarks associated with its sticky notes.[1] Defendants are Maurice Kanbar, MK Enterprises, Rollit, LLC and Rex Products (hereinafter collectively referred to in the singular as "Kanbar"), who market a product called ROLLIT, a dispenser of sticky note paper on a roll. Defendant counterclaimed to invalidate 3M's trademarks. Kanbar moves here to compel more specific initial disclosures and to require Plaintiff to "organize" or "itemize" the documents produced in response to Kanbar's First Request for Production.

**A) <u>Initial Disclosures</u>**

The disputed portion of 3M's initial disclosure, responding to FED. R. CIV. P. 26(a)(1)(B), described the documents 3M expected to rely upon to support its claims as follows:

---

[1] Specifically, the "POST-IT" trademark and the Canary Yellow color trademark.

> Such documents relate to the POST-IT trademark, the development, marketing, and sales of products offered under or in connection with the POST-IT trademark, 3M's registrations for the POST-IT trademark, 3M's enforcement of the trademark, the development, marketing, and sales of products offered under or in connection with the Canary Yellow trademark, 3M's registration for the Canary Yellow trademark, and 3M's enforcement of the Canary Yellow trademark.

(Landry Decl., Ex. B).

Kanbar's motion requested that 3M be compelled to produce a specific description of the documents produced by Bates number. Alternatively, Defendant sought an order pursuant to FED. R. CIV. P. 37(c)(1) prohibiting 3M from using as evidence at trial any document not specifically disclosed. According to Kanbar, the breadth of 3M's description makes it is impossible for it to reasonably determine which documents 3M might rely upon to prove its claims and defenses. Defendant pointed to the Advisory Committee notes to FED. R. CIV. P. 26(a) which explain that the specificity of the response should be sufficient to "enable opposing parties (1) to make an informed decision concerning which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests."[2]

3M counters this by asserting that the categories as defined in the initial disclosures were adequate to meet the requirements of FED. R. CIV. P. 26(a)(1)(B), and that Kanbar is improperly demanding a trial exhibit list as an initial disclosure. Plaintiff cites to the portion of the Advisory Committee note which states that, "[u]nlike pretrial exhibit disclosure ... the disclosing party need not provide an itemized listing of each document, item of electronically stored info, or tangible thing."[3]

The Court finds that, although Plaintiff's disclosures were lacking in specificity, they were adequate to meet the requirements of FED. R. CIV. P. 26. An itemized listing of each document is not required under Rule 26(a). Accordingly, Defendant's motion with respect to the initial disclosures is DENIED.

---

[2] *Moore's Federal Practice 3d* (§ 26.22[4][b][I]), citing Advisory Committee's note (1993).

[3] *Id.*

2

**B) Organization of Document Production**

In May 2006, Defendant served its First Request for Production of Documents which were, by Kanbar's own admission, especially broad.[4] 3M responded to the request on a rolling basis by printing and copying documents (mostly from electronic sources) and placing these documents into boxes available for inspection. After settlement discussions faltered in August, 3M produced a relatively small portion of the total request in November of 2006 and more in February of 2007. By April, the number of boxes was up to at least 170, perhaps more. While this amount represents almost all of the responsive documents, there are indications that even now stray responsive documents are being produced.[5] Defendants requested an index from Plaintiffs and received a "source list" which Kanbar asserts is largely inadequate for its purposes.[6] The parties are currently taking depositions and nearing their August 6, 2007 discovery cutoff date. Defendant moves to compel production of an index to the documents produced or of an organization of the documents by category of request.[7]

The motion is brought pursuant to FED. R. CIV. P. 34, which provides in relevant part: "a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." According to Kanbar, the voluminous production request should be indexed, labeled or categorized. Otherwise, Defendant argues, there is no way for it to readily digest the information, to determine what documents are responsive to what requests, or to assess whether

---

[4] *See e.g.,* Request No. 25: "All documents and things referring to the quality of Plaintiff's goods." (Leviton Decl., Ex. 5).

[5] (Landry Decl.); Although the parties dispute the numbers precisely, they generally agree that some 600,000 pages had been produced at the time of the hearing. Plaintiff represents that each document is responsive to one or more of the defendant's requests.

[6] The "source list" identifies by Bates number ranges the individuals or departments where the documents originated. (Leviton Decl., Ex. 11). Given the volume of documents, the Court finds credible Kanbar's assertions that this list did not provide much guidance in identifying which documents were responsive to which requests.

[7] Defendant's counsel also complained of 3M's delay in submitting a privilege log for the documents produced. 3M acknowledged its obligation to do so promptly at the hearing. The Court feels that production of a privilege log within two weeks from the issuance of this Order is more than appropriate.

3

there are missing documents that should be included. This is particularly true in light of the limited time frame between the bulk of the production and the discovery cutoff date.

Kanbar cites to the purpose and spirit of Rule 34, which it says is to keep the responding party from burying relevant information. Defendant argues that the nature of the production presents sufficient "good cause" for the court to compel that they be organized by Plaintiff in some useful way. Kanbar's position rests on the body of caselaw which incorporates an exceptional circumstances doctrine into FED. R. CIV. P. 34. These cases indicate that, although in most situations the producing party has the option to produce documents either in the usual course of business or organized by categories, there are instances where "some special factor justifies allowing the requesting party to select the method, such as when the method chosen places an unreasonable burden on the party seeking production."[8] However, cases which interpret Rule 34 in this way typically find that volume alone is insufficient for a finding of special circumstances. See, *Renda Marine, Inc. v. U.S.*, 58 Fed.Cl. 57 (2003).

Plaintiff counters these arguments by pointing to the breadth of Defendant's production requests and explaining that 3M was making a diligent response to those requests. 3M contends that the documents were produced as kept in the "ordinary course of business" (in this case, mostly printed and produced as organized by electronic source).[9] The company also points to caselaw which holds that an index is (1) not required and (2) even if it had been made it would be protected by the work product doctrine. Citing, *Braun v. Agri-Systems*, (Not Reported in F.Supp.2d), 2006 WL 278592 (E.D.Cal.).

The Court is therefore presented with a defendant in a predicament essentially of its own making. Kanbar faces the task of sorting page by page through a mass of documents in a limited period of time. However, this situation was largely the result of Kanbar's own actions, namely, the broad document requests, the lack of a demand for electronic production, and

---

[8] *Moore's Federal Practice* 3d (§ 34.14[3]).

[9] Although this case was filed prior to the recent amendment to Rule 34(b) pertaining to electronically stored information ("ESI"), the reasoning behind the amendment is particularly apt and raises some concerns as to 3M's chosen method of production.  See, *Id.*, citing Fed.R.Civ.P. 24(b)(ii) and Advisory Committee note (2006).

4

1  insufficient staff to digest the document production. In applying these facts to the applicable
2  law, the Court finds that, although this was a voluminous production, there is no evidence of
3  Plaintiff purposefully producing documents in a disorganized manner. As such, the Court finds
4  that there are not exceptional circumstances here which permit the receiving party to determine
5  the method of production. Furthermore, cases cited by Plaintiff with respect to the creation and
6  production of an index, even though not entirely on point, are persuasive.

   Because the law does not support Defendant's position, its motion to compel 3M to
"organize" or "itemize" the documents is DENIED. Nevertheless, because it appears that
Plaintiff did to some extent delay its production and because it is not onerous for the Plaintiff to
do so,[10] the Court ORDERS Plaintiff to produce all previously produced responsive
electronically stored information ("ESI") to Defendant in an electronic and reasonably usable
format.[11] Although the electronic production does not provide Kanbar quite what it asked for,
this order should enable Defendant to utilize commercially available software search engines to
accomplish by its own undertaking at least some of what it unsuccessfully sought from the
Court. Accordingly, 3M shall produce the responsive ESI **within 10 days of the date of this order.**

**IT IS SO ORDERED.**

Dated: 6/14/07

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[10] Mike Gannon, counsel for 3M's Office of Intellectual Property, acknowledged at the hearing that there is an electronic record of responsive documents. He also indicated that the responsive files were likely copied to separate hard drives. Gannon did not claim that producing electronic copies would be burdensome, and common sense suggests to the Court that the ESI could be produced electronically with modest cost and effort to 3M.

[11] Counsel for both parties and their respective information technology consultants should immediately confer and agree upon a "reasonably useable format."

5

THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WILL BE ELECTRONICALLY MAILED TO:

John Cameron Adkisson jca@fr.com, mla@fr.com

Ann N. Cathcart Chaplin cathcartchaplin@fr.com, lindstedt@fr.com

Michelle Lee Landry mlandry@kanbar.com

Joel D. Leviton leviton@fr.com, lindner@fr.com

David James Miclean miclean@fr.com, arceo@fr.com

Kevin H. Rhodes krhodes@mmm.com

**A courtesy copy will be delivered to (Counsel is reminded to sign up for E-filing):**

Michael L. Gannon
Office of Intellectual Property Counsel
3M Center
P. O. Box 33427
St. Paul, MN 55133-3427

**Counsel are responsible for transmitting this order to co-counsel who have not signed up for e-filing.**

Dated: 6/14/07           /s/ KRO
                         Chambers of Magistrate Judge Howard R. Lloyd

6